UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ALBION SAVAGE BROWNE, )
)
      Plaintiff )
) 2:16-cv-619-NT
v. )
)
MAINE DEPARTMENT OF )
CORRECTIONS, et al., )
)
      Defendants )

**RECOMMENDED DECISION AFTER SCREENING
AMENDED COMPLAINT AND PROPOSED SUPPLEMENTAL PLEADING
PURSUANT TO 28 U.S.C. § 1915(e)**

In this action, Plaintiff Albion Savage Browne, formerly an inmate in the custody of the Maine Department of Corrections, alleges that while he was incarcerated, the staff of the Maine Correctional Center, including corrections staff and medical staff, violated his constitutional rights. Plaintiff filed an application to proceed in forma pauperis (ECF No. 2), which application the Court granted. (ECF No. 4).

On February 8, 2017, after a review in accordance with 28 U.S.C. § 1915, the Court dismissed Plaintiff's claim against the Maine Department of Corrections, his claim against the Maine Correctional Center, and his claim based on his work assignments. (Order Affirming Recommended Decision, ECF No. 7; Recommended Decision, ECF No. 5.) The Court also afforded Plaintiff an opportunity to amend his complaint to assert a claim against the parties Plaintiff believed were responsible for the medical care of his eye. (*Id.*)

On March 3, 2017, Plaintiff filed a lengthy amended complaint (ECF No. 10) in which he provided additional facts regarding his vision. He also attempts to assert claims

1

related to various other matters, including claims against State Defendants the Court previously dismissed because the claims are barred by the Eleventh Amendment. On March 16 and 17, 2017, Plaintiff filed additional documents, which have been entered on the docket as a motion to extend time to amend the complaint further (ECF Nos. 11 and 11-1) and a supporting memorandum. (ECF No. 12.)

In accordance with the in forma pauperis statute, 28 U.S.C. § 1915, a preliminary review of Plaintiff's amended complaint and supplemental pleadings is appropriate. After review of Plaintiff's amended complaint and the supplemental pleadings, I recommend the Court deny Plaintiff's motion to extend time to further amend his complaint,[1] and I recommend the Court dismiss Plaintiff's amended complaint.

### STANDARD OF REVIEW

The in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding in forma pauperis, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare

---

[1] Given the review in accordance with 28 U.SC. § 1915, the motion to extend time necessarily requires a consideration of the substance of the proposed amendment. Although a motion to amend is within a magistrate judge's authority, *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000), because any proposed amendment is relevant to the § 1915 review, I determined that a recommended decision was appropriate.

prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim, *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## BACKGROUND FACTS[2]

In his filings, Plaintiff attempts to assert claims based on the following: (1) underlying criminal proceedings in Maine state court that resulted in Plaintiff's sentence of incarceration, which proceedings Plaintiff evidently maintains violated Maine's motor

---

[2] The facts set forth herein are derived from Plaintiff's amended complaint.

vehicle law; (2) Plaintiff's belief that he has a constitutional right to travel, which right was violated by Maine's licensure laws; and (3) Plaintiff's eye health and treatment during his approximate 24-month incarceration at the Maine Correctional Center.

Prior to his incarceration, Plaintiff experienced a severe injury when he was shot in the eye with a frozen paintball. (Am. Compl. at 6, ECF No. 10.) Although "the components of vision were intact," the healing process extended for a period of months. (*Id.*) When Plaintiff was sentenced, apparently based on his status as a habitual offender, Plaintiff was continuing to recover from his injury.

At the Maine Correctional Center, Plaintiff received care for his eye from employees of Correct Care Solutions (CCS), the Maine Department of Corrections' contract provider for medical services. According to Plaintiff, individuals responsible for the care denied and delayed access to prescribed care. (*Id.* at 5.) During his incarceration, physical activity that increased Plaintiff's heart rate caused "internal hemorrhaging and loss of vision, which took weeks to return." (*Id.*)

As the result of his condition, Defendants, including correctional staff, excluded Plaintiff from, or denied him access to, activities and programs such as woodshop, automotive repair, recreation and work release. (*Id.* at 5.) Plaintiff also asserts that "the extreme consequences of any foreign body or even slight trauma to the eye" presented extremely serious challenges for him. (*Id.* at 7.) Moreover, Plaintiff regularly experienced nausea, dizziness, headaches, and poor depth perception due to his eye injury.[3] (*Id.*)

---

[3] Plaintiff also states that his vision was improving in this timeframe. (Am. Compl. at 8.)

Plaintiff maintains that given his injury, the state court's sentence of incarceration and the conditions of confinement amounted to "torture." (*Id.*) Although Plaintiff states that the conditions were "not the result of a single person committing an act with [the] purposeful, deliberate intention of violating constitutional rights," Plaintiff asserts that the State of Maine, Department of Corrections, and the State's "agents" are liable for the combined effects because they incarcerated Plaintiff "for a victimless motor vehicle charge." (*Id.*) Plaintiff asserts that incarceration, under the circumstances, served "no penological purpose." (*Id.*)

Plaintiff further asserts that corrections officers assigned Plaintiff to "exceedingly dangerous work assignments." (*Id.* at 8.) In addition, other inmates occasionally caused injury to Plaintiff. (*Id.*) The work assignments evidently involved outdoor weeding activity and lawn care, which exposed Plaintiff to dust and debris, and kept him bent over so that pressure increased on his eye. (*Id.* at 10, 16 – 17.) Plaintiff also complains of exposure to winter ice and snow particles, which he encountered during some walks to the mess hall. (*Id.* at 10.)

Plaintiff went a "few weeks" without prescribed eye drops, but CCS staff obtained the drops "ASAP after being told the seriousness of the condition by the surgeons." (*Id.* at 11.) A member of CCS staff provided Plaintiff with a "keep on person" prescription for his eye drops, and restricted Plaintiff to a lower bunk after he fell from a ladder. (*Id.* at 12.) The prison eye doctor informed Plaintiff that the injury was beyond his expertise and that he would be referred for consultation with outside providers. (*Id.*)

When a "fill in" pod officer ordered inmates to clean the overhead light fixtures, Plaintiff was concerned the work would expose Plaintiff's eye to dust and debris. (*Id.* at 12.) Fearing he might be "maced" and/or forcefully extracted from the cell block if he did not perform the work, Plaintiff participated in the cleaning, but after debris entered his eye, Plaintiff told the officer he would not perform the work. (*Id.* at 13.) Plaintiff was not subjected to discipline or required to work further. (*Id.*)

Plaintiff's exposure to debris from the cleaning activity was "the first medical emergency." (*Id.*) The incident increased the pressure in Plaintiff's eye and he "spent the following month curled into a ball unable to leave [his] cell or move at all." (*Id.* at 14.) Two months after the incident, Plaintiff saw the CCS eye doctor who measured the pressure in Plaintiff's eye as extremely high. (*Id.* at 15.) "Not so long after that" Plaintiff saw an outside provider. The provider, a surgeon involved in Plaintiff's care, instructed Plaintiff to reduce his use of the medication because it can contribute to pressure buildup. The provider scheduled a follow up visit in two months, but CCS did not arrange for the visit or any further visit with an outside provider. (*Id.*)

According to Plaintiff, a sergeant Lucier understood Plaintiff's condition based on information Plaintiff provided, but told Plaintiff he could not relieve Plaintiff of ordinary work assignments unless CCS ordered that Plaintiff perform no work. (*Id.* at 17 – 18.) Sergeant Lucier, however, obtained a pair of shaded safety glasses for Plaintiff to wear. (*Id.* at 18.) Plaintiff asserts someone should have issued safety glasses during intake or shortly thereafter. (*Id.*) The glasses helped with the walk to lunch and Plaintiff was even able "to walk the track sometimes." (*Id.*)

Plaintiff alleges that on one occasion, he was "hit in the eye by a football." (*Id.* at 19.) Although he filled out an emergency form, he was not seen for two months. (*Id.*) Eventually, a corrections officer expressed concern about the condition of Plaintiff's eye and arranged for Plaintiff to receive an outside consultation. The outside consultant determined that immediate surgery was required. (*Id.* at 21.) Shortly before the end of Plaintiff's sentence, Plaintiff underwent surgery. (*Id.* at 22.) Plaintiff alleges surgery would not have been required had CCS and/or the Department of Corrections provided regular care and referrals, and issued orders protecting Plaintiff from work assignments and other hazards. (*Id.* at 22 – 23.) Plaintiff alleges "permanent lifelong and irreversible damage." (*Id.* at 24.)

In the balance of his amended complaint, Plaintiff alleges various facts regarding the State of Maine's violation of Plaintiff's constitutional right to travel by subjecting him to criminal sanctions for operating a vehicle without a license. Plaintiff also describes the challenges he experienced because he lacked a driver's license throughout his life. (*Id.* at 25 – 55.)

Plaintiff asserts his claim against the following Defendants:

The State of Maine Executive Branch (including all executive officers), Department of Corrections, Department of Health and Human Services, Department of Public Safety, Department of Administrative and Financial Services, Department of Labor Disability Services, Maine State Auditor, Maine Judicial Branch, Maine Legislature (including all senators and representatives), CCS, intake nurse, unknown sergeant, eye doctor with CCS, Sergeant Lucier, Wendy Riebe of CCS, unknown doctor with CCS, "third person needed

7

to approve," and "[a]ll knowing or unknowing participants …, any overseer or policymaker or any person who contributed in any way." (*Id.* at 1 – 3.)

## DISCUSSION

**A.  Sovereign Immunity**

As explained in the prior Recommended Decision Screening Plaintiff's Complaint (ECF No. 5), Plaintiff cannot proceed in this Court on a claim against the State of Maine or its agencies, and thus he cannot proceed against any of the several state entities named in the amended complaint. *Edelman v. Jordan*, 415 U.S. 651, 653 (1974); *Davidson v. Howe*, 749 F.3d 21, 27 (1st Cir. 2014); *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 n. 6 (1st Cir. 2009). Furthermore, the State and its agencies are not subject to suit under 42 U.S.C. § 1983. *Nieves–Marquez v. Puerto Rico,* 353 F.3d 108, 124 (1st Cir. 2003).

**B.  Constitutional Right to Travel**

To the extent Plaintiff challenges the constitutionality of prior state court criminal proceedings in which he was convicted of driving without a license, federal district courts do not have discretion to exercise jurisdiction "over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis,* 546 U.S. 459, 460 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, (2005)).

Even if Plaintiff's amended complaint is construed as an attempt to allege a claim based on a violation of Plaintiff's right to travel, Plaintiff has failed to assert an actionable claim. The constitutional right to travel does not preclude the prosecution and conviction

of Plaintiff for driving without a license. The reasoning of the District Court of Vermont on this point is sound:

> The Supreme Court has recognized a constitutional right to travel. *See Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 903 (1986). However, the constitutional right to travel guarantees citizens of one state the right to enter and leave other states or to be treated as welcome visitors in other states, *Chavez v. Ill. State Police,* 251 F.3d 612, 648 (7th Cir. 2001), not the right to drive a car without a license, *Miller v. Reed,* 176 F.3d 1202, 1205–06 (9th Cir. 1999). As the Ninth Circuit has noted, the Supreme Court, in *Dixon v. Love,* 431 U.S. 105, 112 – 16 (1977), held that "a state could summarily suspend or revoke the license of a motorist who had been repeatedly convicted of traffic offenses with due process.... The Court conspicuously did not afford the possession of a driver's license the weight of a fundamental right." *Miller,* 176 F.3d at 1206. Indeed, the right of an individual to drive a vehicle is not a fundamental right; "it is a revocable privilege that is granted upon compliance with statutory licensing provisions." *State v. Skurdal,* 767 P.2d 304, 307 (Mont. 1988) (collecting cases); *see also Boutin v. Conway,* 153 Vt. 558, 564 (1990); *Mackey v. Montrym,* 443 U.S. 1, 10 (1979) (state has "paramount interest" in preserving safety of public highways).

*Haselton v. Amestoy*, No. 1:03-CV-223, 2003 WL 23273581, at *2 (D. Vt. Nov. 4, 2003). In short, state legislators, executive officers, and judicial officers do not violate the Constitution when they enforce state motor vehicle licensure requirements.

**C.     Deliberate Indifference**

Defendants' obligation to Plaintiff regarding medical services is governed by the Due Process Clause of the Fourteenth Amendment. Specifically, the Due Process Clause imposes on the states the "substantive obligation" not to treat prisoners in their care in a manner that reflects "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical needs," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 105 – 106 (1976)). To be actionable, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard evaluates the seriousness of the risk of harm to one's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is serious if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991).

The subjective standard concerns the culpability of the defendant. There must be evidence that a particular defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

Deliberate indifference must be distinguished from negligence. As the First Circuit explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

Here, Plaintiff has alleged sufficient facts to establish that he suffered from a serious medical condition. Plaintiff, however, has not asserted any facts to support a claim against any particular individual. The Court permitted Plaintiff the opportunity to amend his complaint "to assert a claim against the appropriate, identifiable staff members or medical providers responsible for his medical care." (Recommended Decision at 6, ECF No. 5; Order Affirming Recommended Decision, ECF No. 7.) Although Plaintiff identified certain individual medical providers and perhaps others as defendants, he has failed to allege a sufficient factual basis for an actionable claim against any of the individuals. That is, the amended complaint does not describe conduct attributable to any particular individual that could reasonably constitute deliberate indifference to Plaintiff's medical needs.

Finally, whether the Court views CCS as a supervisory entity or a municipal entity, Plaintiff has not alleged a factual basis for liability on the part of CCS. *Morales v.*

*Chadbourne*, 793 F.3d 208, 221 (1st Cir. 2015) (supervisory official's liability for the acts of subordinates depends on supervisor's own action or inaction being affirmatively linked to the behavior of the subordinate, such as where supervisor is a primary violator or direct participant, or fails to act despite notice of a deficiency that may contribute to a constitutional deprivation); *Rodriguez v. Mun. of San Juan*, 659 F.3d 168, 181 (1st Cir. 2011) ("Liability only attaches where the municipality causes the deprivation through an official policy or custom[, such as where] a person with final policymaking authority caused the supposed constitutional injury." (internal quotation marks and citation omitted)); *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 504 (1st Cir. 2011) ("An underlying constitutional tort is required to proceed under a municipal liability theory. Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom."); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 n.9 (1st Cir. 2009) ("Because we find there to be no underlying constitutional violation …, the claims of supervisory liability … must fail.").[4] *See also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability

---

[4] Recently, in *Glisson v. Indiana Department of Corrections*, 849 F.3d 372 (7th Cir. 2017) (en banc) (6-4), the Seventh Circuit reviewed the entry of summary judgment in favor of a private prison health care entity and considered whether "an organization might be liable even if its individual agents are not." *Id.* at 378. The court held that a genuine issue existed for trial where a state directive had long called for implementation of a policy of coordinated care for chronically ill prisoners; there is an obvious need for coordinated care in some circumstances, as exemplified by the plaintiff's circumstances; the defendant was on notice that the absence of a coordinated care policy would result in the occasional violation of the constitutional rights of chronically ill inmates; and the defendant made a deliberate choice not to promulgate a coordinated care policy. *Id.* at 378 – 82. In this case, even if the First Circuit were to adopt the reasoning of the Seventh Circuit in a similar situation, the facts alleged by Plaintiff are not similar to the facts of the *Glisson* case, nor would it be reasonable to infer that the particular harm of which Plaintiff complains was the direct result of action or inaction on the part of CCS such that a claim would exist even in the absence of an actionable claim against an individual involved in his care.

is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff, therefore, has not asserted an actionable claim for deliberate indifference to his medical needs.

**D.     Negligence**

Plaintiff's amended complaint could conceivably be construed to assert a state law claim of negligence against CCS.[5] If Plaintiff intended to assert such a claim, however, Plaintiff cannot proceed on the claim in this Court on the current record. Under Maine law, to proceed on a medical negligence case, Plaintiff must first complete the prelitigation screening process mandated by the Maine Health Security Act. 24 M.R.S. §§ 2853 *et seq*. *See Henderson v. Laser Spine Inst.*, 815 F. Supp. 2d 353, 381 (D. Me. 2011). Plaintiff has alleged no facts to suggest, and the record does not otherwise reflect, that Plaintiff has satisfied the prerequisites to a state law medical malpractice action.

**E.     Motion to Extend Time**

The Clerk docketed Plaintiff's most recent pleading as a motion to extend time to amend further Plaintiff's complaint. (ECF No. 11.) The pleading/motion is evidently offered in connection with Plaintiff's claim that certain defendants violated his constitutional right to travel. As explained above, Plaintiff has not asserted any facts that

---

[5] With respect to subject matter jurisdiction over Plaintiff's negligence claim against CCS, if the Court dismisses all federal claims, supplemental jurisdiction may be declined. 28 U.S.C. § 1367(c). However, diversity jurisdiction likely could exist under 28 U.S.C. § 1332 if the Court dismissed the non-diverse parties associated with the federal claim (i.e., the State, its agencies, and the individual defendants). Plaintiff states in his amended complaint that he is a resident of South Carolina domiciled in Maine and that CCS maintains its corporate headquarters in Tennessee. (Amended Complaint at 1 – 2.)

would support an actionable claim based on the violation of his right to travel. Accordingly, a further amendment to include the information provided in Plaintiff's motion would be futile. *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)"). To extend the time, therefore, to amend the complaint to assert the information would also be futile.

## CONCLUSION

Based on the foregoing analysis, pursuant to 28 U.S.C. § 1915(e)(2), I recommend the Court deny Plaintiff's motion to extend the time to further amend his complaint. I also recommend the Court dismiss Plaintiff's amended complaint.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of April, 2017.